**CITY OF MERIDIAN, Plaintiff,**

v.

**NEW ORLEANS AND NORTHEASTERN RAILROAD COMPANY, Defendant.**

**Civ. A. No. 1135.**

United States District Court
S. D. Mississippi, E. D.

Aug. 2, 1968.

Thomas D. Bourdeaux, Meridian, Miss., for plaintiff.

O. Winston Cameron, Meridian, Miss., for defendant.

RUSSELL, District Judge.

### OPINION OF THE COURT

The City of Meridian, Mississippi, originally filed this action in 1962 in the Chancery Court of Lauderdale County, Mississippi, against New Orleans and Northeastern Railroad Company, a foreign corporation doing business in the State of Mississippi, seeking mandatorily to require said defendant to remove five culverts installed under its trackbed which allegedly impede the flow of Gallagher Creek and cause it to overflow its banks during and following heavy rains. The cause was removed to this court on diversity of citizenship and a claim of $25,000.00 in damages. In 1963, plaintiff was granted leave to recast its original complaint. In 1965, plaintiff having declined to amend, defendant amended its answer and filed a counterclaim for declaratory relief denying that the cause presents a justiciable controversy. During the course of the trial, the presiding Judge died, and the case has been re-heard by this Court without a jury.

Although a great part of the evidence was couched in scientific terms by engineers and hydrologists, the issue is fairly simple. By installing five drainage culverts in what, before 1955, was an open trestle, has the defendant railroad materially contributed to the flooding of Gallagher Creek during periods of heavy rains, and, if so, does the plaintiff, City of Meridian, have the right to require the railroad to remove the culverts?

Gallagher Creek is a five mile meandering, nonnavigable stream, running generally north to south within the city limits of Meridian. Toward its southern end, and about a mile north of where it runs into Sowashee Creek, the parallel tracks of the Illinois Central Railroad Company and of defendant railroad cross the creek bed in an easterly and westerly direction, the Illinois Central tracks lying north of those of defendant. During rains, Gallagher Creek drains surface waters from an area of 3500 acres along both banks, approximately 3400 acres of which are north of the tracks and in an urban area. Prior to 1955 all of the tracks were laid over an open, wooden type trestle, the underside of which was higher than the banks of the creek. In 1955, the defendant, at a point under the trestle where its tracks lie, installed five, corrugated metal pipes or culverts, each a little over eight feet in diameter, and offering a total opening of 276.25 square feet. These pipes, a couple of feet apart and 120 feet in length, with a 30 degree bend near their entrance, extend to the south side of the trestle. All of the area around the pipes, formerly open, was filled in and

now forms part of the railroad embankment. The City of Meridian not only owns property along the creek but has installed and maintains drainage structures or bridges at various points north of the trestle where city streets cross the stream, among them, going north from the trestle, crossings or bridges at Hooper St., 5th St., Paulding St., and 8th St. Both sides agree that prior to and since 1955, particularly in 1962 and 1964, flood waters have overflowed Gallagher's banks at one or more of these points, including the area adjacent to the trestle on the north. Plaintiff, while conceding that its drainage structures at the above named streets do not at all times adequately carry the flow because of trash and other obstructions, utility lines which cross at these points, and silting, at the same time pointing out that excess water can and does freely flow over the utility lines, contends that the overflow and silting have been increased due to the inadequacy of defendant's culverts below these crossings. On the other hand, defendant maintains that, first, its culverts are adequate to carry a reasonable flow, and, second, that the culverts are only a part of an over-all drainage problem arising from flooding of Gallagher Creek and Sowashee Creek to the southeast, which cannot be solved piece meal. Further, that the flooding occurring north of the trestle is caused by plaintiff's inadequate structures and failure to keep the channel free of obstructions. To this plaintiff responds that if its structures were unimpeded, the greater would be the flood at the culverts.

The Court viewed the sites of the various drainage structures at a time when the flow through the creek bed was nothing more than a trickle. According to profile charts, the area of the bridge opening at Hooper St. is 336 square feet, at Fifth St. is 356 square feet, and at Paulding St. is 400 square feet. As stated above, the opening provided by the down stream railroad culverts is a total area of 276.25 square feet. The top of the trestle was established as 313 feet above mean sea level and six to seven feet above the tops of the culverts. At the time of the Court's viewing, all of these openings were partially blocked by silt, tree limbs, trash and refuse. At the street openings, there were one or more water or other utility pipes laid from bank to bank, the degree of their impediment to a free flow being in dispute.

The 1962 and 1964 flooding of Gallagher Creek, following periods of heavy rains, were the focal points of most of the evidence. James L. Garrett, city engineer for plaintiff, among those who testified that flooding upstream was worse since the installation of the culverts, stated that the City had dredged the channel in 1959, and, due to the culverts, that silting, particularly from the trestle to Hooper Street, was more pronounced than prior to 1955. He observed both the 1962 and 1964 floods and saw water flowing over the city bridges, which the water could not do at the site of the culverts as their highest point is below the heighth of the embankment. In 1962, the highwater mark on the north side of the trestle was 307.-19 feet above mean sea level, and 304.63 feet above on the south side, the difference being the head loss attributable to the inadequacy of the culverts, and which head loss caused a slowing in velocity, backwater, and, consequentially, more silting and a raising of the channel bottom. He stated that there are a number of formulas for determining the adequacy of drainage installations, among them, Talbot's formula used by the Mississippi State Highway Department. By use of this formula, he calculated that there should be an opening at the railroad embankment of 360 square feet instead of the actual area of 276.25 square feet.

Witness Allen G. Cox, representing a consulting engineering firm employed by plaintiff in 1963 to make a study of the Gallagher Creek drainage area, reviewed the conclusions of that study, saying that if all five railroad culverts were fully effective, they would be inadequate

to carry the volume of run-off based on periodic rain return frequencies, the head loss for a once in fifty year rain being 2.7 feet, and for a twenty-five year rain, 2.5 feet. Based on weather information and high water marks, he described the 1962 flood, in which the culverts were not fully effective and when there was a 2.5 foot head loss, as a minor storm, having a return frequency of two to five years. The report recommended that a drainage structure should be designed in urban areas to accommodate a flood of a fifty year return cycle at a flow of 2250 cubic feet per second, which in this instance should have a minimum opening of at least 350 square feet, preferably one bridge-type opening rather than numerous pipes. On cross-examination he conceded that the city's drains at street crossings were not fully effective due to silting, but that these obstructions were negligible compared to that at the culverts.

By agreement of the parties, a hydrologist and a soil conservationist, employees of the U. S. Soil Conservation Service, testified as witnesses for the Court. They affirmed that their agency, at the request of several local organizations, had been requested to make a watershed study of Sowashee Creek, which includes the Gallagher Creek flood plain. From their studies, this agency attempts to route floods according to periodic rain frequencies, in this instance using the 1962 flood as a flood of record. They found that it reached its peak elevation north of the trestle at 307.95 feet mean sea level and that the 1964 storm reached a peak elevation at the same place of 306.98 feet. Their projection for a rainfall of a 10 year frequency showed the peak level would reach 315.33 feet if the top of the embankment were higher. They concede that the creek is obstructed up stream by bridge crossings and debris, and that if the culverts were removed, there would still be some flooding in the absence of channel deepening. Conversely, if the obstructions were removed and the channel deepened, the peak at the culverts would be increased. One of these witnesses estimated that a final draft of the plans for the entire project would not be completed in less than six months, and it would be eighteen months to two years before the project could begin, once all necessary legislation had been effected.

Other witnesses for the plaintiffs included property owners residing adjacent to Gallagher Creek who stated that flood waters had risen higher on their property after 1955 than before.

Henry Eugene Damon, formerly employed as an engineer by the City of Meridian, testified on behalf of defendant. He expressed his familiarity with all the drainage points along Gallagher Creek and identified numerous plats and photographs. From the trestle he observed the flood of 1964, which was in flood at the same time as that of Sowashee Creek, and noted backwater south of the culverts, an indication that Sowashee flooding had backed up as far as the trestle, the inference being that during times of joint flooding, the inadequacy of the railroad culverts is inconsequential.

The primary witness for defendant was Charles W. Okey, a professional engineering consultant with many years' experience in flood control. He undertook by his computations to show that the area of the five culverts, which he fixed at 283 square feet, if completely open and free of silt and debris, could accommodate a flow capacity of 3962 cubic feet per second, a greater velocity than that computed by plaintiff's witness for a 50 year flood. However, this greater velocity was further conditioned upon the channel up stream from the culverts being widened to 30 feet and deepened to 10 feet for at least 1700 feet north, and the channel down stream being widened and deepened to its confluence with Showashee Creek. At the conclusion of his testimony, he conceded that the culverts "could have been larger."

The City of Meridian is not only a riparian owner of certain properties along Gallagher Creek, but it has the duty to maintain its roads and bridges, to which some damage has occurred from flooding. In some instances, it is also the duty of the City to abate nuisances. The Court finds in this case that the City has stated a cause of action. Although for purposes of defense to defendant's counter-claim, plaintiff claims it has no duty to exercise public control over Gallagher Creek, in other words to clean out and deepen the channel if necessary, as opposed to the rights of other riparian owners, the Court does not find it necessary to determine this issue here, but points out that, following action by the defendant as directed herein, should flooding continue in Gallagher Creek, it may be necessary that the City will have to meet squarely any ultimate responsibility it may be found to owe to other riparian owners and the community. See 64 C.J.S. Municipal Corporations Sec. 1807, pp. 279, 280.

The Court concludes that the railroad, when it installed the five corrugated, metal culverts, was under a duty not to impair the flow of Gallagher Creek, and should have made, under acceptable engineering practices, suitable provisions for carrying off the water effectually. See 93 C.J.S. Waters § 20, pp. 627 and 628. On the basis of the preponderating evidence, digested above, the Court finds that the railroad, by the installation of said culverts, has impeded the flow of Gallagher Creek of surface water drainage following rains that can be predicted or anticipated to occur during periodic cycles, and that plaintiff's prayer for relief should be granted to the extent of directing the defendant to make such changes or alterations to its crossing over said creek as are required by acceptable engineering practices to meet reasonably foreseeable floods. The Court further finds that defendant should have a reasonable time to submit plans of such changes or alterations to this Court for approval.

An order may be drawn accordingly.